IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

WILLIAM RAY TAYLOR, II,

      Petitioner,

v.                           Case No. 2:09-cv-01302

ADRIAN HOKE, Warden,
Huttonsville Correctional Center,

      Respondent.


PROPOSED FINDINGS AND RECOMMENDATION

On December 3, 2009, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket sheet document # 2). This matter is assigned to the Honorable John T. Copenhaver, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On February 3, 2010, pursuant to the undersigned's Order entered on December 10, 2009, Respondent filed a Response to the Petition (# 8), a Motion for Summary Judgment, with accompanying exhibits (# 9), and a Memorandum in Support (# 10).  On February 9, 2010, in accordance with the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the undersigned entered an Order advising Petitioner of his right to file a response to Respondent's Motion for Summary Judgment, and setting deadlines for a response and

reply.  (# 11).

On February 25, 2010, Petitioner filed a Motion to Extend Time to Respond to the Motion for Summary Judgment (# 12), and also filed a Motion to Amend or Supplement his section 2254 petition (# 13).  On April 20, 2010, the undersigned entered an Order finding that Petitioner's Motion to Amend or Supplement sought to further address his claim of ineffective assistance of counsel concerning the conduct of his counsel during pre-trial proceedings.  (# 14)  The undersigned further found that it appeared that Petitioner had exhausted this claim.  (Id.)  The April 20, 2010 Order gave Respondent an opportunity to supplement his Motion for Summary Judgment based upon the Petitioner's supplemental filing, granted Petitioner's Motion for Extension of Time to Respond to the Motion for Summary Judgment, and set new deadlines for the response and reply.  (Id.)

On April 26, 2010, Respondent filed a Supplement to his Memorandum of Law in Support of his Motion for Summary Judgment (# 15).  On June 2, 2010, Petitioner filed a Response to the Respondent's Motion for Summary Judgment.  (# 16).  On June 3, 2010, Respondent filed a reply.  (# 17).  This matter is ripe for determination.

## STATE COURT PROCEEDINGS

On June 15, 2006, Petitioner was indicted by a Kanawha County grand jury on two counts of Burglary (W. Va. Code § 61-3-11), one

2

count of First Degree Sexual Assault (W. Va. Code § 61-8B-3), and one count of Violation of a Domestic Violence Protective Order (W. Va. Code § 48-27-903).  (<u>State v. Taylor</u>, Case No. 06-F-282, 06-M-62) (# 9, Ex. 1).  Following a jury trial conducted between February 5, 2007 and February 7, 2007, Petitioner was convicted of one count of Second Degree Sexual Assault, a lesser included offense of First Degree Sexual Assault, and one count of Violation of a Domestic Violence Protective Order.  (<u>Id.</u>, Ex. 2).  By Order entered March 9, 2007, Petitioner was sentenced to not less than 10 nor more than 25 years in the penitentiary for the Second Degree Sexual Assault conviction, and a period of one year for his conviction for Violation of a Domestic Violence Protective Order. The sentences run concurrently.  (<u>Id.</u>, Ex. 3).

On July 6, 2007, Petitioner, by counsel, filed a Petition for Appeal to the Supreme Court of Appeals of West Virginia (the "SCAWV"), assigning the following two grounds for relief:

1. The State introduced perjured evidence before the jury it either knew was perjured or became aware was perjured and failed to disavow the false evidence.

2. The State failed to produce evidence sufficient to sustain a verdict of guilty as a matter of law.

(<u>Id.</u>, Ex. 4).  The Petition for Appeal was refused by the SCAWV on February 12, 2008.  (<u>Id.</u>)

On June 6, 2008, Petitioner, proceeding <u>pro</u> <u>se</u>, filed a Petition for a Writ of Habeas Corpus in the Circuit Court of

3

Kanawha County (<u>Taylor v. Waid</u>, Case No. 08-MISC-205).  Petitioner was appointed counsel and, on December 22, 2008, Petitioner's counsel filed an Amended Petition for a Writ of Habeas Corpus in the Circuit Court of Kanawha County, which raised the following grounds for relief:

> 1.   Ineffective Assistance of Counsel during pretrial stages in violation of the Sixth and Fourteenth Amendments of the United States Constitution.
>
> 2.   Ineffective Assistance of Counsel during trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution.
>
> 3.   Juror Bias in violation of the Sixth and Fourteenth Amendments of the United States Constitution.
>
> 4.   Improper prejudicial remarks by the prosecutor in violation of the Sixth and Fourteenth Amendments of the United States Constitution.
>
> 5.   Ineffective Assistance of Counsel on Appeal in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

(<u>Id.</u>, Ex. 5).  The Circuit Court conducted an evidentiary hearing on February 13, 2009.  Petitioner was the sole witness at the hearing.  On April 6, 2009, the Circuit Court entered an Order addressing the merits of the claims in the petition and denying Petitioner habeas corpus relief.  (<u>Id.</u>, Ex. 6).

On July 30, 2009, Petitioner filed a Petition for Appeal from the denial of the Circuit Court habeas corpus petition in the SCAWV, raising the following grounds for relief:

> 1.   The deficient performance of the Petitioner's counsel in pre-trial matters, including the first abortive attempt at a jury trial, denied Petitioner

4

> his federal and state constitutional rights to effective assistance of counsel;
>
> 2. The deficient performance of the Petitioner's counsel at trial denied Petitioner his federal and state constitutional rights to effective assistance of counsel;
>
> 3. The known presence of a possibly biased juror in the jury panel tainted and compromised the integrity of the deliberative process, denying Petitioner his federal and state constitutional rights by depriving him of a trial by an impartial and unbiased jury of his peers;
>
> 4. The improperly prejudicial remarks made extensively and repeatedly by the prosecutor during closing argument denied the Petitioner his federal and state constitutional rights by irrevocably confusing the jury and inflaming them against the Petitioner;
>
> 5. The deficient performance of the Petitioner's counsel on direct appeal denied the Petitioner his federal and state constitutional rights to the effective assistance of counsel.

(_Id._, Ex. 7).  The Petition for Appeal was refused on October 29, 2009.  (_Id._)  Petitioner then filed the instant section 2254 petition on December 3, 2009.

Petitioner raises four grounds for relief in his section 2254 petition.  Those grounds are as follows:

> 1. Ineffective Assistance of Counsel;
>
> 2. Violation of Due Process;
>
> 3. Biased juror denied trial by impartial and unbiased jury;
>
> 4. Prosecutor made improper and prejudicial statements to jury.

(# 2).

5

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but

6

unreasonably applies that principle to the facts of the prisoner's case.  Id. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.  See, e.g., Blackledge v. Allison, 431 U.S. 63, 81 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991).  Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## STATEMENT OF FACTS AND TRIAL TESTIMONY

This summary of the facts is derived from the Findings of Fact made by the Circuit Court of Kanawha County in its Final Order Denying Habeas Relief (# 9, Ex. 6) and from the undersigned's review of the trial transcripts:

On February 7, 2006, at 1:48 a.m., the South Charleston Police were called to the scene of an alleged domestic violence incident.

The victim, Melissa Lovelady ("Ms. Lovelady"), was crying, had red marks on her neck and chest, and stated that she and Petitioner had just been in a fight. (#9, Ex. 11 at 91). Thereafter, Ms. Lovelady obtained a Domestic Violence Protective Order ("DVPO") against Petitioner, which was served on Petitioner. (Id. at 101-107).

On March 15, 2006, around 4:00 a.m., Officer Jesse Myers ("Officer Myers") of the South Charleston Police Department, who had responded to the initial domestic incident involving Petitioner and Ms. Lovelady, was parked in a parking lot near Ms. Lovelady's home, completing some paperwork. (Id. at 110). Petitioner approached his car and began talking to Officer Myers. According to Officer Myers, Petitioner asked about the date of their next hearing and told him that Ms. Lovelady had violated the DVPO. Petitioner also stated that "he had done some bad things to her that he needed to pay for." (Id. at 111-112).

After Petitioner had walked away, Office Myers was dispatched to Ms. Lovelady's house in response to a call made to 911. According to the 911 report, Ms. Lovelady stated that Petitioner had just entered her home, where he allegedly held a knife to her throat, with his hand over her mouth, threatening to kill her and her son, and threatening to burn down the house if she screamed. (Id. at 115). The 911 report does not say anything about sexual assault.

Officer Myers testified that, when he arrived at the house, Ms. Lovelady was uncontrollable. (Id. at 117). Officer Myers observed fresh red marks on Ms. Lovelady's neck and chest and a laceration on her chin, with dried blood on her neck. (Id. at 117-118). Ms. Lovelady gave Officer Myers a written statement in which she stated that she had been raped and that Petitioner held a knife to her throat. (Id. at 118-120). Officer Myers testified at trial that, while at the scene, he observed a cut on the couch, and that a phone line had been cut. (Id. at 121).

Officer Myers transported Ms. Lovelady to Thomas Memorial Hospital, where she submitted to a sexual assault examination and a rape kit was prepared. Various forensic and DNA tests later revealed that Petitioner's sperm was present inside Ms. Lovelady's vagina. (Id. at 72, 123-126). A physical examination revealed contusions on Ms. Lovelady's left breast and thigh, a slight bruise on her neck, and a small linear abrasion across her chin. (Id. at 171-186).

On the same night of the incident, Petitioner went to Thomas Memorial Hospital, where he sought treatment for alleged drug and alcohol abuse. Shortly thereafter, a mental hygiene hearing was held and Petitioner checked himself into Highland Hospital for inpatient treatment for approximately 10 days. While at Highland Hospital, Petitioner wrote a letter to Ms. Lovelady, which stated, in full:

Missy, I just wanted to let you know how things are going. As you know, I'm in the hospital. They tell me I'm <u>By-polliar</u> [sic; bi-polar] and the drinking and drugs and stress sent me over the edge. I know your [sic; you're] upset with me right now. I [sic; I'm] sorry about what I did. I hope you can forgive me someday. I rally [sic; really] didn't know what I was doing. I'll be here for a while. I start my meds today. I wish I would have done this before. Maybe me and you could have worked things out. I don't blame you if you never won't [sic; want] to talk to me again. Well I just wanted to tell you I'm sorry for everything. And I'll always love you. I didn't know I was this sick. Well, I gotta go. Just remember, you are the only one Ive [sic; I've] ever <u>loved</u>. You can call me if you like 926-1600. Code No. <u>48473</u>. If you dont [sic; don't] call I'll know you never won't [sic; want] to speak to me again. Ill [sic; I'll] be alright. I'm going to get better. If I don't hear from you, you have a wonderfull [sic; wonderful] life and I hope [sic; wish] you all the happyness [sic; happiness] in the world. And I wont [sic; won't] try to contact you in any way. Love always, Billy

(<u>Id.</u> at 134). The letter was read to the jury by Officer Myers.

(<u>Id.</u>) Although Petitioner admitted to writing the letter, the State called a handwriting expert who confirmed that Petitioner wrote it. (<u>Id.</u> at 17-27; # 9, Ex. 12 at 390-391).

Ms. Lovelady and her son also testified for the State. Concerning the incident, on March 15, 2006, Ms. Lovelady testified that she was asleep on the couch, and awoke to Petitioner putting his hand over her mouth and a knife to her throat, and he said "I come to kill you and your son and burn the house down, bitch." (# 9, Ex. 11 at 228). Ms. Lovelady further stated that Petitioner subsequently let her get up to get a drink from the kitchen. She stated that Petitioner told her not to try to call the police because he had cut the phone lines. (<u>Id.</u> at 230). She further

10

testified that Petitioner accused her of cheating on him and knocked her drink all over her. (Id. at 231).

Ms. Lovelady stated that she went to the bedroom to change and Petitioner followed her. She further testified that Petitioner started kissing her, and she said "no," but he forced himself on her and had sexual intercourse with her. (Id. at 232-233). When he was finished, Ms. Lovelady told him to get out of the house. When he left, she went upstairs and woke her son and told him Petitioner had raped her. (Id. at 234). Ms. Lovelady stated that her son got up and went outside to fix the phone line so they could call 911. (Id. at 235). Ms. Lovelady also testified about the sexual assault examination that she underwent. (Id. at 236-237).

Petitioner testified at trial. Petitioner admitted to having sexual intercourse with Ms. Lovelady on March 15, 2006, but claimed that it was consensual. (# 9, Ex. 12 at 362-364). Petitioner testified that, after they had sex, he and Ms. Lovelady got into a fight about their relationship, including her belief that he was seeing someone else, and she asked him to leave. (Id. at 364-366). Petitioner further testified that, when he left the house, he saw Officer Myers and approached him to ask about the date for their next court hearing. (Id. at 366-367). Petitioner stated that he told Officer Myers he had just been at the house with Ms. Lovelady and that they had argued. (Id. at 367).

Petitioner then testified about going to the hospital because he "wanted to get some help for my drinking." (Id. at 368). He further stated that he "didn't want another failed relationship" and that he "was trying to work it out with [Ms. Lovelady.]" (Id.) Petitioner further stated that he wrote the letter to Ms. Lovelady to apologize for turning off the electricity and water at the house after she got the DVPO, and for saying hurtful things, and just for the way he had been treating her. (Id. at 370).

Petitioner also testified that, after the hearing on the DVPO on March 28, 2006, he was arrested by the South Charleston Police Department and taken in for questioning about the alleged rape on March 15, 2006. Petitioner briefly testified that he was questioned for 20-30 minutes, but he did not go into much detail about his recorded statement, and it was not played for the jury. (Id. at 379-380). Petitioner testified that he told the police that he had sex with Ms. Lovelady that night. (Id. at 381). As will be discussed further below, defense attorney William Forbes had filed a Motion to Suppress any statements made by Petitioner, which was not ruled upon by the trial court, because the parties agreed that the prosecutor did not intend to use this recorded statement. However, as discussed above, the State did put on evidence about Petitioner's statement to Officer Myers on the night of the alleged incident.

12

Petitioner denied cutting the phone line and denied that he raped Ms. Lovelady.  (Id. at 383).  Petitioner also presented the testimony of three other witnesses who testified that they had witnessed Petitioner and Ms. Lovelady voluntarily spending time together and staying overnight with one another during the time period in which the DVPO was in place.  (Id. at 301-335).  None of these witnesses could testify as to the conduct of either Petitioner or Ms. Lovelady on the night in question.

## ANALYSIS

### A.   Ground One - Ineffective assistance of counsel.

In Ground One of his federal petition, Petitioner asserts that his counsel in his criminal proceedings rendered ineffective assistance in violation of his Sixth Amendment rights.  Ground One specifically states:

> My attorney, Mr. Wagner, became so confused that the presiding Judge even noted it on the record.  Another attorney, Mr. Forbes, volunteered to assist Mr. Wagner but Mr. Forbes neither had proper time to review the facts and evidence nor did he conduct his own investigation but he relied solely on the previous work done by Mr. Wagner, who was ill and disoriented for an unknown amount of time.  Mr. Wagner's condition brings suspect not to only the trial but to all of his work on my case.

(# 2 at 5).

In Strickland v. Washington, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel.  A defendant must show (1) that counsel's representation fell below an objective standard of

13

reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687-91.  Moreover, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." Holman v. Gilmore, 126 F.3d 876, 881 (7th Cir. 1997).  " A petitioner may not merely speculate about potential prejudice but must 'affirmatively prove' that the result of the proceedings would have been different but for the deficient performance of trial counsel."  Strickland, 466 U.S. at 693.  Respondent addresses Petitioner's claims of ineffective assistance of counsel using this standard.

Respondent's Memorandum of Law in support of his Motion for Summary Judgment states:

> Petitioner first claims counsel rendered ineffective assistance of counsel during the pretrial phase of his trial. * * *
>
> It is true that Mr. Wagner became so disoriented and confused during an October 3, 2006 pretrial hearing that the court noted it on the record. (Resp't Ex. 8 at 35-42.) Notwithstanding Petitioner's current position, when asked at this hearing if he wanted substitute counsel, he declined. (Resp't Ex. 8 at 38.) The court continued Petitioner's trial for forty-five days, during which Mr. Wagner hired co-counsel. (Resp't Ex. 8 at 31.)
>
> The Petitioner, Mr. Wagner and new co-counsel William Forbes appeared at the next status conference. Mr. Forbes told the trial court that he had received the Petitioner's file six days ago, and was not prepared to go forward. (Resp't Ex. 9 at 3-4.) He also requested

14

that his client undergo a competency evaluation. (<u>Id.</u>)
The court continued Petitioner's trial a second time,
scheduled the competency evaluation, and set a hearing
for early December. (Resp't Ex. 9 at 5, 7.) The trial
court granted Petitioner's third motion for a
continuance, continuing his trial to the next term of
court, during the competency hearing. (Resp't Ex. 10 at
8.) Petitioner's trial did not begin until February 5,
2007, almost four months after appointment of counsel.

Although the Petitioner claims that Mr. Wagner's
performance tainted his entire trial, he has failed to
produce any concrete evidence to support his assertion.
He has not suggested alternative avenues of
investigation, or named witnesses not spoken to. Nor is
there proof that Mr. Forbes relied solely on Mr. Wagner's
trial preparation. As stated above, Mr. Forbes had
almost four months to prepare for trial.

(# 10 at 11-13).

On February 25, 2010, Petitioner filed what has been construed

as a Supplement to his claims of ineffective assistance of counsel.

Petitioner's Supplement states in pertinent part:

Petitioner was represented by a Mr. Walt Wagner who
at all times seemed confused during an initial attempt at
a jury trial on October 3, 2006. This came from pretrial
motions which Mr. Wagner failed to object to the
introduction of evidence given by a patrol[man] Myers.
Evidence where Petitioner was on drugs are mentally
overcomed told Parolman Myers, "I've done some things
wrong in the <u>past</u> to her that I need to pay for," and
that he wanted to know the date of the domestic battery
hearing case, and he said she "the alleged victim" had
violated the protective order. Where the court asked Mr.
Wagner if whether he had any objection to that coming in?

<u>Mr. Wagner</u> answered: It doesn't do anything. The only
thing I would object to is not allowing the officer to
testify –

<u>The Court</u>: Not What?

<u>Mr. Wagner</u>: But I don't think it has any probative
value, so I can't – –

15

<u>The Court</u>: The officer is going to testify to that?

<u>Prosecutor</u>: Yes sir.

<u>The Court</u>: Do you have objection to the officer testifying to that sir?

<u>Mr. Wagner</u>: No, sir.

<u>The Court</u>: Okay.

    Mr. Wagner was noticeably confused during argument regarding introduction of testimony of alleged victims sexual conduct towards the Petitioner in order to establish a defense of consent.  At this point the prosecutor moved for an in camera hearing to determine the relevancy and admissibility of the evidence.

<u>Mr. Wagner</u>: Your Honor, my defense, and I don't mind telling, because it was a consensual sex - -

<u>The Court</u>: I'll hear the evidence.

<u>Mr. Wagner</u>: Okay, basically, I don't see - - that it should not be there because without me being - - I'm not going into any other - -

<u>The Court</u>: Just give me a proffer of what the evidence would be.

<u>Mr. Wagner</u>: Okay.  The evidence would be that - - I lost my train of thought.

    At this point, the prosecutor for the State told the Court that one witness would testify to having allegedly seen the alleged victim actually engaged in sexual intercourse.  Mr. Wagner failed to produce this witness.  Failed to do any kind of any investigation into these serious matters for his client.

(# 13 at 4-6).  Concerning the conduct of both Mr. Wagner and Mr. Forbes, Petitioner's Supplement further summarily states:

    A.    Both counsels failed to do an investigation or present "vital evidence."

> B.  Both counsels let State introduce evidence of a[n]
>     unconstitutional nature where State said this
>     evidence would not be introduced at trial.   No
>     objections from either counsel.

(<u>Id.</u> at 8).

Respondent was ordered to file a Supplemental Brief concerning the issues raised in Petitioner's Supplement.  Respondent filed his Supplemental Memorandum of Law on April 26, 2010.  (# 15).  The Supplemental Memorandum of Law asserts that Petitioner's Supplement "adds little, if anything, to his original Ineffective Assistance of Counsel ground for relief."  The Supplemental Memorandum of Law further states:

> Petitioner initially faults Mr. Wagner for not objecting to the admission of a statement made by the Petitioner to a police officer that he had "done some things wrong in the past to [the victim] that I need to pay for."  (Respondent's Exhibit 8 at 5-6.)  The Petitioner has failed to allege why this statement was inadmissible, or what objections Mr. Wagner could have raised to keep it out.  He simply points out a piece of evidence admitted at trial, and faults counsel for not keeping it out.

> As counsel for the State argued, the Petitioner was not in custody, nor was he being interrogated.  His statement was voluntary.  Indeed, co-counsel William Forbes also conceded its admissibility prior to Petitioner's trial.  [FN 1]  Defense counsel is not required to make futile motions in order to remain constitutionally effective.

> [FN 1 - After the trial court appointed Mr. Forbes, it stated that it would consider all pre-trial matters anew.  Notwithstanding the court's position, Mr. Forbes did not object to the admission of Petitioner's statement.  (Respondent's Exhibit 6 at 11.)]

> Petitioner also claims that both Mr. Wagner and Mr. Forbes failed to properly investigate his case, and bring

17

forth vital evidence. He then claims that both attorneys
allowed the State to introduce unconstitutional evidence
without objection. As the Petitioner has not specified
what this evidence is, his claim is insufficiently pled
and should be dismissed with prejudice. See <u>Blackledge
v. Allison</u>, 431 U.S. 63, 75 n.7 (1977)("(N)otice pleading
is not sufficient, for the petition is expected to state
facts that point to a real possibility of constitutional
error")(citation omitted). The petition must come
forward with evidence that the claim has merit.
Allegations amounting to nothing more than conclusions
provide no basis for an evidentiary hearing. <u>Nickerson
v. Lee</u>, 971 F.2d 1125 (4th Cir. 1992).

(# 15 at 2-3).

Petitioner expands on these claims in his Response to the
Motion for Summary Judgment (# 16). First, Petitioner asserts that
both Mr. Wagner and Mr. Forbes failed to perform minimal research
that any ordinarily prudent attorney would have done before
advising Petitioner to take the witness stand. (<u>Id.</u> at 17).
Petitioner claims that "these attorneys knew or should have known
the obvious pitfalls of such a decision. With proper advice this
would not have occurred. (<u>Id.</u>)

Second, Petitioner asserts that both attorneys failed to
interview key witnesses for the defense. Specifically, Petitioner
states:

"<u>John Tyler</u>" was never interviewed and he allegedly saw
the Petitioner and the alleged victim having consensual
sex the day of the alleged rape. Mr. Tyler walked in on
the two of them. This would be a major factor in a case
of supposed rape for the defense. Mr. Tyler could have
testified that the alleged victim was not in the least
bit struggling or asking the Petitioner to stop. This
was even after he had walked in on them. "<u>Mason Kirk</u>"
took Petitioner to the alleged victim's house twice while
the restraining order was in effect. Mr. Kirk also seen

18

> the alleged victim at Petitioner's uncle's house while
> restraining order was in effect.
>
> These two witnesses alone, if interviewed by
> attorneys for Petitioner, could have changed the whole
> outcome of the trial. At the end of trial, the jury was
> hung. These lawyers failed to interview any neighbors
> about the suppose[d] incident or if anything was heard on
> that day.

(# 16 at 18-19).

Respondent's Reply asserts that Petitioner's claim in his

Response that his counsel did not adequately advise him about

testifying is unexhausted, because he had not specifically raised

it in his prior habeas petitions, and argues that the claim should

be dismissed. (# 17 at 2-3). In both his Memorandum of Law and

his Reply, Respondent directs the court to the findings of the

state habeas court concerning the conduct of Petitioner's counsel,

which held as follows:

> 6.   In this matter, the Court concludes that although
>      there is evidence to support Petitioner's assertion
>      that, by reason of ill health, Mr. Wagner's pre-
>      trial conduct fell below professional standards,
>      Petitioner has not shown how any errors on the part
>      of Mr. Wagner actually prejudiced him or that there
>      is a reasonable probability that, in the absence of
>      any errors, the outcome of Petitioner's case would
>      have been different.
>
> 7.   With regard to the assertion that Mr. Wagner failed
>      to investigate and elicit testimony from certain
>      witnesses, the Court concludes that Petitioner
>      failed to show that there is a reasonable
>      probability that but-for Mr. Wagner's alleged error
>      a different outcome would have resulted.
>      Petitioner has claimed that he brought to Mr.
>      Wagner's attention the existence and identity of a
>      witness, John Tyler ("Mr. Tyler"), who had
>      allegedly seen Petitioner and the [the victim]

> engaged in consensual sexual intercourse between
> the time of the initial incident on February 7,
> 2006, to the time of the incident on March 15,
> 2006. Assuming that Mr. Wagner failed to interview
> and/or subpoena Mr. Tyler, the Court concludes that
> there is no evidence to show that Mr. Tyler would
> have actually testified that he saw the Petitioner
> and [the victim] having sex. In the Petitioner's
> own words, "Tyler is the one that <u>allegedly</u> seen
> the sex." 10/3/06 Tr. 35. Thus, even the
> Petitioner was unsure of Mr. Tyler's purported
> testimony. As Petitioner did not present the
> testimony of Mr. Tyler at the omnibus hearing, the
> Court is not persuaded that, but-for Mr. Wagner's
> failure, there is a reasonable probability that the
> outcome of the trial would have been any different.

(# 9, Ex. 6 at 10-11). Respondent's Reply asserts that "the same logic adopted by the state habeas court would also apply to Mason Kirk. Mr. Kirk was not called to testify at the Petitioner's omnibus hearing, thus the Court would be left to speculate as to the contents of his testimony." (# 17 at 4). Respondent asserts that the court's ruling was not contrary to, or an unreasonable application of, the <u>Strickland</u> standard.

The undersigned's staff inquired of Respondent's counsel concerning a transcript of the omnibus hearing that occurred in Petitioner's state habeas proceedings and learned that the hearing was not transcribed. Nevertheless, because Petitioner was apparently the only witness who testified, the undersigned finds that the transcript is not necessary to a resolution of Petitioner's federal habeas corpus claims.

The undersigned will first address the two specific claims discussed in Petitioner's Response, which were not specifically

20

mentioned in his section 2254 petition.  To the extent that Petitioner has claimed that his counsel (both Forbes and Wagner) failed to adequately advise him about taking the stand, Petitioner did not raise this specific claim in his state habeas petitions and, therefore, the undersigned proposes that the presiding District Judge **FIND** that the claim is unexhausted.  However, if the District Judge were to address this specific claim, the undersigned proposes that the presiding District Judge **FIND** that it lacks merit.

Petitioner asserted that the sexual intercourse between himself and Ms. Lovelady was consensual.  In order to present such a defense, Petitioner needed to testify.  Furthermore, a review of the trial transcript reveals that the following colloquy occurred between Petitioner and the trial court:

> THE COURT:     Mr. Taylor, I need your attention please.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:     I want to talk with you a little bit about your right to testify in this matter or not to testify, if you so choose.  I assume that you have had some discussions with Mr. Forbes about whether you will testify or not; is that right?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:     And he discussed with you, I assume, that you have the right to testify in this matter if you choose to do so.
>
> THE DEFENDANT: Yes, sir.

21

THE COURT:          That you subject yourself to Cross Examination by the Prosecuting Attorney if you do testify.

THE DEFENDANT: Yes, sir.

THE COURT:          I assume further that he has told you that if you decide you don't wish to testify, you have the right against self-incrimination under the Fifth Amendment of the Constitution of the United States; are you aware of that?

THE DEFENDANT: Yes, sir.

THE COURT:          And that if you were to exercise that right not to testify, I would instruct the jury that they are to draw no adverse inference whatsoever against you as a result of your failure to testify, and in fact, I would tell them that they are not to presume or speculate or guess as to why you are not testifying, but that you have that constitutional right not to do so; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT:          Do you have any questions about your right to testify or not to testify?

THE DEFENDANT: No, sir.

THE COURT:          And have you discussed that with Mr. Forbes?

THE DEFENDANT: That's correct.

THE COURT:          And I assume that perhaps you will have some additional discussions with him with regard to that, maybe this evening or in the morning?

THE DEFENDANT: I suspect we will.

THE COURT:          Alright. I just wanted to give you that admonition and that information so that you would be able to make an informed

22

> decision about whether you wish to
> testify or not.

(# 9, Ex. 11 at 284-285).  Thus, Petitioner was adequately advised about the consequences of taking the stand.  As to the advice Petitioner's counsel provided about whether or not to testify, that is a matter of strategy that is not subject to review in habeas corpus.  The Fourth Circuit has held as follows on this issue:

> . . . the advice provided by a criminal defense lawyer on whether his clients should testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1436 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065, 104 S. Ct. 750, 79 L. Ed.2d 207 (1984); <u>see also</u> <u>Jones v. Murray</u>, 947 F.2d 1106, 1116 n.6 (4th Cir. 1991)(reiterating principle that advice to testify is paradigmatic of strategic decision); <u>Rogers-Bey v. Lane</u>, 896 F.2d 279, 283 (7th Cir. 1990)(concluding that counsel's advice not to testify based in part on erroneous belief that defendant could be impeached by prior conviction, was not deficient performance); <u>Reyes-Vejerano v. United States</u>, 117 F. Supp.2d 103, 108-09 (D.P.R. 2000)("Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance of counsel]").

<u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002).

Thus, should the District Court determine that this specific claim is reviewable, the undersigned proposes that the presiding District Judge **FIND** that Petitioner cannot demonstrate that his counsel's advice constituted ineffective assistance of counsel.

Furthermore, because Petitioner did not present the testimony of Mr. Tyler or Mr. Kirk at the omnibus hearing, Petitioner has not demonstrated that their testimony would have changed the outcome of the criminal proceedings.  The undersigned notes that Mr. Kirk did

23

testify in a pre-trial hearing.  His in camera testimony indicated that he had taken Petitioner to see the alleged victim on at least one occasion after the entry of the DVPO, but he could not pinpoint the date on which that occurred.  Mr. Kirk further stated that Petitioner had told him that "she wants me to come over" and that Petitioner and Ms. Lovelady were very friendly and kissed hello when they arrived.  Mr. Kirk stated that he left Petitioner at Ms. Lovelady's house that day.  (# 8 at 23-25).

This pre-trial hearing occurred at the time that Mr. Wagner was Petitioner's sole counsel.  After Mr. Forbes appeared as Petitioner's counsel, the defense did not call either Mr. Kirk or Mr. Tyler to testify.  The decision of whether to call these witnesses was a matter of trial strategy.  The United States Court of Appeals for the Fourth Circuit has held that ineffective assistance of counsel may not be established by questioning counsel's choice of strategy.  See Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991).  The decision not to call these witnesses did not prejudice Petitioner's defense and the state courts so found.

Petitioner's assertion in his section 2254 petition that Mr. Wagner's confusion during the pre-trial proceedings on October 3, 2006 makes suspect his entire work on the case, and constitutes ineffective assistance of counsel, also lacks merit.  The trial court continued the trial to allow Mr. Wagner to bring in co-counsel, and then allowed a four month period before the trial

24

actually occurred, which was adequate time to permit Mr. Forbes to get up to speed with the case and for Mr. Forbes and Mr. Wagner to prepare a defense. Petitioner's blanket assertion that Mr. Forbes did not have proper time to review the facts and evidence is insufficient to establish ineffective assistance of counsel. Petitioner's further assertion that Mr. Forbes did not conduct his own investigation is not supported by the record.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the conduct of his counsel fell below an objective standard of reasonableness, or that the conduct prejudiced his defense. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state courts' decisions denying habeas corpus relief concerning these claims were either contrary to, or an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on Ground One of Petitioner's section 2254 petition.

**B.  Ground Two - Denial of due process.**

In Ground Two of Petitioner's federal petition, Petitioner alleges a violation of his right to due process, but this claim, as pled, also concerns the conduct of Petitioner's counsel. The claim states:

> Both Mr. Wagner and Mr. Forbes failed to make objections
> to the prosecutor's improper and prejudicial statements,
> both failed to call proper witnesses for the defense.

25

(# 2 at 6).

Respondent's Memorandum of Law in support of his Motion for Summary Judgment asserts that this ground for relief is insufficiently pled. Respondent states that "Petitioner does not specify which improper and prejudicial statements he is talking about, or what witnesses he is referring to. Therefore this ground for relief is without merit as a matter of law." (# 10 at 13-14).

Petitioner elaborates on this claim in his Response. The Response states:

> During pre-trial motions on February 5, 2007, the first day of Petitioner's trial, state prosecutor let [the] court know that a statement made by Petitioner to a police officer would not be offered into testimony at trial. Mr. Forbes, Petitioner's then appointed lawyer, states to the court that he was informed that the prosecution did not intend to use his client's statement to the police officer. <u>The Court: Is that right, Mr. Giggenback [sic; Giggenbach]?</u> (Prosecutor) That is right Your Honor. (February 5, 2007, Trial Transcript, Volume (Tr. Vol.) I, [111-12]).

> The statement was offered into evidence doing [sic; during] Petitioner's trial by [the] state anyway. There was no objection by defense counsel. (Tr. Vol. I 111-112). There is no denying the use of this statement by petitioner to police would tend to favor the state and its case. Where court should have disallowed this statement from being introduced. Statement as recounted by Police Officer Myers: "and he stated to me that he had done some bad things that he needed to pay for." (Tr. Vol. I 111-112). This statement shows the misleading and fraudulent testimony of Officer Myers in his attempt to influence the jury. When Prosecutor Giggenbac[h] recounted what the Petitioner said, it came out like this "I've done something wrong to her <u>in the past</u> that I need to pay for" and she violated the FPO.

> Whichever version of this statement was correct, it was a violation of due process. This statement was

26

considered suppressed, and should not have been allowed
at trial.  This statement in effect could have caused the
jury to convict after being hung.  Due process was
violated under both the Fifth and Fourteenth Amendments
to a fair trial.  The actions taken by [the] state court
and Petitioner's own lawyers deprived the Petitioner of
any ability to properly defend himself.  As to state
convictions challenged because of improper use of a
confession, the sole authority of the United States
Supreme Court is to ascertain whether the basic
safeguards of the Fourteenth Amendment have been
violated.  The prosecution relied heavily on this
confession to establish its case.

(# 16 at 19-22).  Petitioner cites the Supreme Court's decision in

Blackburn v. Alabama, 361 U.S. 199 (1960) in support of his

contention that his statement was improperly admitted.  Petitioner

states "any confession made to a police officer or any

[questioning] by police officers which in fact produces a

confession which is not the product of a free intellect renders

that confession inadmissible." (Id. at 28).

Respondent's Reply cites to the transcript where the

admissibility of this statement was discussed on the record.  The

transcript indicates as follows:

> Mr. Giggenbach:     The other issue is this Defendant's
> admission to the officer.  When he
> walked up to the officer, right
> after the incident, and he said –
> the officer is sitting in the
> parking lot working on a report, and
> he walks up and says, "I've done
> something wrong to [the victim] in
> the past that I need to pay for,"
> and that she violated the FPO.
>
> And you know, it is clearly
> admissible, your Honor, because [the
> Petitioner] wasn't in custody, he

27

<blockquote>
wasn't being interrogated, and he initiated the conversation.

We didn't get to that issue before because we stopped the hearing, but I have the officer here so we can take that up right now if you want.

Mr. Forbes:         I think it comes in, your Honor.

The Court:         So you have no objection to it?

Mr. Forbes:         No.

The Court:         Okay.
</blockquote>

(# 9, Resp't Ex. 11 at 11-12).  The undersigned notes that the next section of the transcript appears to be the part that is germane to Petitioner's claim.  It reads:

<blockquote>
THE COURT:        Alright.  Mr. Forbes, you've got a Motion to Suppress.

MR. FORBES:        Your Honor, I've been informed by the Prosecution that they don't intend to use my client's statement to the police, and therefore - -

THE COURT:        The one that Mr. Giggenbach just spread upon the record?

MR. FORBES:        That's correct, your Honor.

THE COURT:        Is that right, Mr. Giggenbach?

MR. GIGGENBACH:    That's right, your Honor.
</blockquote>

(Id. at 12).

The undersigned's staff has reviewed the criminal case file in the Kanawha County Circuit Court and determined that, when Petitioner was arrested on March 28, 2006, he was questioned by South Charleston police officers in a recorded statement, during

which he was read his <u>Miranda</u> rights.  In the statement, Petitioner admitted to having consensual sexual relations with Ms. Lovelady, and was further questioned about the events of the night of March 15, 2006, his conversation with Officer Myers, and the letter that Petitioner wrote to the alleged victim while he was hospitalized at Highland Hospital.  The prosecution, consistent with its promise, did not offer the statement into evidence at trial, and this statement is not part of the record before this court.  However, Mr. Forbes did briefly ask Petitioner about being questioned by the police when Petitioner testified at the trial.

The undersigned believes that it is this recorded statement to which the prosecuting attorney, Mr. Giggenbach, was referring when he said that the State did not intend to use Petitioner's statement to the police, and that it was the recorded statement that Mr. Forbes was referencing when he stated that he did not need to pursue the Motion to Suppress that he had filed.  The undersigned brings this to the presiding District Judge's attention to illustrate that it does not appear that the prosecutor was acting in bad faith when he said the State would not use "Petitioner's statement to police."

Nevertheless, to the extent that Petitioner is now asserting that the statement made to Officer Myers on March 15, 2006 was inadmissible and should have been suppressed, the undersigned will now address that claim.

Respondent's Reply asserts:

> Clearly, defense counsel was correct.  The Petitioner was
> not in custody when he made the statement to the officer,
> nor was it coerced in any way.  Indeed, the statement was
> wholly voluntary.   More importantly, the State never
> promised not to introduce the statement.   The record
> unequivocally states that the State had every intention
> of introducing this piece of evidence.

(# 17 at 4-5).

In his state habeas corpus petitions, Petitioner did not raise
any claim concerning the denial of due process based upon the use
of any of his statements to police.   Rather, Petitioner's only
claim concerning the admission of his statements to police was
raised in the context of an ineffective assistance of counsel
claim, which, apparently, has been abandoned by Petitioner in his
section 2254 petition, in favor of the due process claim.

The state habeas court addressed the issue of Petitioner's
statement in the context of ineffective assistance of counsel based
upon his counsel's failure to object to the admission of the
statement to Officer Myers.   The state court's Order denying habeas
relief states:

> 9.   Next, Petitioner asserts that Mr. Wagner was
> ineffective by failing to object to the admission
> of Petitioner's voluntary statement to Officer
> Myers.   Assuming that it was error for Mr. Wagner
> to not object, the Court concludes Petitioner has
> not shown how he was prejudiced by said failure.
> After co-counsel was appointed to assist Mr.
> Wagner, the Court made it clear to both parties
> that all previous rulings regarding pre-trial
> matters would be considered "anew" and the record
> is replete with further admonitions by the Court
> that the case was starting "anew."  See Trial Tr.

30

> 5, 298-99.  Therefore, even if Mr. Wagner performed
> deficiently by failing to object to the admission
> of the statement, Petitioner has not shown how he
> was prejudiced by said failure, because co-counsel
> was given an opportunity to object to the admission
> of the statement prior to trial [FN 5]
>
> [FN 5 - Petitioner does assert that Mr. Forbes was
> ineffective by failing to move to suppress his
> statement to Officer Myers.  This assertion is
> addressed below.]

(# 9, Ex. 6 at 11).  The state habeas court then addressed Mr.

Forbes' conduct as follows:

> 14.  Petitioner asserts, however, that based on his
> unfamiliarity with the case, Mr. Forbes failed to
> object to the admission of testimony by Officer
> Myers regarding Petitioner's statement on the night
> of the incident.  Upon review of the transcript
> from the pre-trial hearing and trial, the Court
> concludes that Mr. Forbes failed to object to the
> admission of the statement for strategic reasons.
> [FN 6].  Therefore, the Court concludes that Mr.
> Forbes' failure to object to the officer's
> testimony does not amount to ineffective assistance
> of counsel. * * *
>
> [FN 6 - It appears to the Court that Mr. Forbes
> purposely did not object to the admissibility of
> the statement based on his understanding of the
> law, however, the Court notes that during cross-
> examination of Officer Myers, Mr. Forbes did
> challenge the authenticity of the statement, as
> written and recorded, by the officer.]
>
> * * *
>
> 16.  Finally, the Court notes that even if a reviewing
> court were to find that Mr. Forbes provided
> ineffective assistance of counsel, there is nothing
> to support the second "but-for" prong, of the
> ineffective assistance of counsel test.
> Substantial facts and evidence in this case
> implicated Petitioner, including Petitioner's
> statement to Officer Myers, and the handwritten
> letter he sent to Ms. Lovelady.  Petitioner claims

31

> that a different result "may very possibly" have
> occurred had Mr. Forbes been more familiar with the
> case, however, that is not the standard for review.
> Therefore, based upon the above, the Court
> concludes that Petitioner has failed to prove that
> he is entitled to relief based on his claim of
> ineffective assistance of counsel at trial.

(Id. at 11-12).

Although the state court's analysis of Petitioner's statement was in the context of a claim of ineffective assistance of counsel, the analysis concerning the prejudice factor of the ineffective assistance claims is relevant to a due process analysis as well. It is unquestionable that the statement Petitioner made to Officer Myers was voluntary under the law. Petitioner was not in custody, he was not being questioned and, in fact, he initiated the conversation with Officer Myers. Thus, there was no basis to suppress the statement. While the statement was potentially damaging to Petitioner's case, it was not so unfairly prejudicial as to affect the fundamental fairness of the proceedings.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the admission of his statement to Officer Myers on the night of the alleged crime violated his right to due process of law or a fair trial. Nor has Petitioner demonstrated that his counsels' failure to object to the admission of Petitioner's statement to Officer Myers constituted ineffective assistance of counsel. The undersigned further proposes that the presiding District Judge **FIND**

that the state courts' decisions denying Petitioner habeas corpus relief were neither contrary to, nor an unreasonable application of, clearly-established federal law.   The undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on Ground Two of Petitioner's section 2254 petition.

### C.   Ground Three - Denial of fair trial - biased juror.

In Ground Three of his section 2254 petition, Petitioner asserts that he was denied a fair trial by an impartial and unbiased jury because a juror allegedly patted the prosecutor on the arm and wished him good luck.  (# 2 at 8).   Respondent's Memorandum of Law addresses this claim as follows:

> Petitioner next claims that, after jury selection and prior to swearing in the panel, a juror patted counsel for the State's arm, and wished him good luck.
>
> * * *
>
> In the case at bar, Counsel for the State requested a bench conference where the following transpired:

> MR. GIGGENBACH:   This juror, when he left the Courtroom, he touched me on the arm as he walked out of Court and said, 'Good luck to you.'   I felt like I should disclose that.

> THE COURT:   Well, if he did, we're going to obviously bump up one of our alternates, because I am not bringing anybody else in.

> MR. GIGGENBACH:   Okay.

> THE COURT:   What's his name?

33

```
MR. GIGGENBACH:        His name is Ronald Martin.

THE COURT
(to Juror Martin):    Mr. Martin, would you come up here for a
                      moment please?

(Juror Complied)

THE COURT:            A question has arose that as you
                      were leaving the Courtroom, we're
                      not really sure if it was you or
                      not, but somebody made a comment to
                      Mr. Giggenbach; was it you?

JUROR MARTIN:         I made no comment.

MR. GIGGENBACH:       I must have the wrong person; I'm
                      sorry.

(Resp't Ex. 11 at 60-61).
```

(# 10 at 15-16).

As noted by Respondent:

Under the Sixth and Fourteenth Amendments, a defendant is guaranteed a trial by an impartial and unbiased jury. See Nebraska v. Stuart, 427 U.S. 539, 551 (1976)(citations omitted)("The Sixth Amendment guarantees 'trial by an impartial jury . . .' in federal criminal prosecutions." Because trial by jury in criminal cases is fundamental to the American scheme of justice, "the Due Process Clause of the Fourteenth Amendment guarantees the same right in state criminal prosecutions."); Murphy v. Florida, 421 U.S. 794, 799 (1975)(citations omitted)("The constitutional standard of fairness requires that a defendant have 'a panel of impartial, indifferent jurors.'"); Sheppard v. Maxwell, 384 U.S. 333, 362 (1966)("Due Process requires that the accused receive a trial by an impartial jury free of outside influence."); Irvin v. Dowd, 366 U.S. 717, 722 (1961)("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.")

(Id. at 14-15).  Respondent further correctly notes that:

34

absent contrary indications, jurors are presumed to be
impartial. <u>Poynter v. Ratcliff</u>, 874 F.2d 219, 221 (4th
Cir. 1989).  The defendant bears the burden of showing a
strong possibility of juror bias. <u>Wells v. Murray</u>, 831
F.2d 468, 472 (4th Cir. 1987).  "The bias of a
prospective juror may be actual or implied; that is it
may be bias in fact, or bias conclusively presumed as [a]
matter of law." <u>Conway v. Polk</u> 453 F.3d 567, 585 (4th
Cir. 2006) citing <u>United States v. Wood</u>, 299 U.S. 123,
133 (1936).

(<u>Id.</u> at 15).  Finally, Respondent asserts:

> In <u>Ristaino v. Moss</u>, 424 U.S. 589, 596 (1976), the
> Court held "'[T]he determination of impartiality, in
> which demeanor plays such an important part, is
> particularly within the province of the trial judge.'
> 424 U.S. 589, 596 (1976) (quoting <u>Rideau v. Louisiana</u>,
> 373 U.S. 723, 733 (1963)(Clark J., dissenting))." Thus,
> a trial judge has "very broad discretion in deciding
> whether to excuse a juror for cause and his decision will
> not be overturned except for manifest abuse of that
> discretion." <u>Poynter</u>, 874 F.2d at 222. <u>See also</u> <u>Snyder
> v. Coiner</u>, 510 F.2d 224, 230 (4th Cir. 1975)("[T]he
> determination of the disqualification of a juror was for
> the trial court").

(<u>Id.</u>)

Petitioner's Response to the Motion for Summary Judgment
states:

> About the comment, Mr. Martin denied ever saying it.  Mr.
> Martin remained on the jury.  This was a violation to
> keep Mr. Martin on the jury.  A violation of both the
> Sixth and Fourteenth Amendments to a fair trial by an
> impartial jury.

(# 16 at 22).  Respondent did not re-visit this claim in his Reply.

(# 17).

In <u>Wainright v. Witt</u>, 469 U.S. 412, 420 (1985), the Supreme

Court held that "[a] trial judge's determination of potential juror

bias . . . is a factual finding entitled to the presumption of

35

correctness contained in 28 U.S.C. § 2254(d)."  In this case, the
judge found that there was no evidence that this particular juror
had made any comment that would lead to a finding that he could not
be impartial.  The state habeas court in reviewing this claim made
the following findings:

> 19.  The Court finds, however, that Petitioner has not
> proven juror bias in this matter.  Rather,
> Petitioner simply asserts that there exists the
> <u>possibility</u> of bias.  While Mr. Giggenbach
> indicated he thought it was Juror Martin who said,
> "good luck," there were other jurors that left with
> Juror Martin at the time he was initially
> dismissed.  The Court did inquire of Juror Martin,
> on the record, and before counsel.  Juror Martin
> stated that he "made no comment" to Mr. Giggenbach
> and Mr. Giggenbach admitted he could have been
> mistaken as to the identity of the juror.  <u>See</u>
> Trial Tr. 61.  Further, Petitioner has not offered
> any evidence or testimony to substantiate his claim
> that Juror Martin was biased or that any other
> particular juror was biased.  Therefore, the Court
> concludes that Petitioner has not proven that he
> was entitled to relief based on his contention that
> he was denied an impartial jury.

(# 9, Ex. 6 at 14).

The undersigned proposes that the presiding District Judge
**FIND** that Petitioner has not demonstrated by clear and convincing
evidence that the factual findings made by the State habeas court
were erroneous or unreasonable.  The undersigned proposes that the
presiding District Judge **FIND** that the state courts' decisions
denying Petitioner habeas corpus relief on this claim were neither
contrary to, nor an unreasonable application of, clearly
established federal law, and were not based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings.  The undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on Ground Three of Petitioner's section 2254 petition.

### D.    Ground Four - Improper remarks by the prosecutor.

In Ground Four of his federal petition, Petitioner contends that the prosecutor made inappropriate and prejudicial remarks in his closing argument which Petitioner asserts denied him a fair trial.  The claim specifically states:

> The prosecutor asked the jury to think of how the victim felt when the pictures of her naked body and a diagram of her naked body and pictures of her vagina and diagrams of her vagina were up on the courtroom wall, "think of how embarrassing it was, how scared she was."  He further stated, "Now I have kids and there is no way I'd put my kids in harm's way, . . . there could have been a knife fight if the defendant was around."

(# 2 at 10).

Respondent's Memorandum of Law in support of his Motion for Summary Judgment asserts that the prosecutor's comments were within the bounds of appropriate argument.  (# 10 at 17).  The Memorandum recites the comments, which, in full, state as follows:

> MR. PLANTS:     Now think how [the victim] felt when we were here and there were pictures of her naked body – a diagram of her naked body up on the wall, pictures and diagrams of her vagina up on the wall; think how humiliating that was.     Think how embarrassing it was, think how scared she was.  And you saw her on the stand.  You

37

>make your own decision.  I don't think
>she would do that over a lie.
>
>I don't think she would go through the
>two and a half hours of poking and
>prodding, anal and vaginal swabs at the
>hospital over a lie.
>
>Most of all, I don't think that she would
>wake up at 3:00 a.m. in the morning.
>after having, if you believe the
>Defendant's story, consensual sex, with
>her ex-boyfriend, wake up randomly in the
>middle of the night, walk upstairs and
>wake her son, her teenage son, and lie to
>him about rape.

(# 9, Ex. 13, at 441-442).  During the closing arguments, Mr.

Plants further stated:

>Now, there's already been an altercation
>in the past.  That's why the Protective
>Order was in place.  Now, the Defendant's
>story, if you believe that, you'd have to
>believe that this mother woke up - - went
>upstairs, woke her teenage son up, lied
>to him, and made him so angry and so
>upset that he'd go downstairs and get a
>butcher knife, walk outside, scan the
>area, and fix the phone line to call 911.
>Now, I've got kids, and there is no way
>I'd put my kids in harm's way.  There
>could have been a physical altercation;
>there could have been a knife fight if
>the Defendant was around.  There's no way
>she did that over a lie.

(Id. at 442-443).

Respondent's Memorandum of Law further states:

>The State is always free to make a strong closing
>based upon reasonable inferences drawn from the evidence.
>United States v. Francisco, 35 F.3d 116, 120 (4th Cir.
>1994)("It is undisputed that closing argument is not
>merely a time for recitation of uncontroverted facts, but
>rather the prosecution may make fair inferences from the

evidence.").

A prosecutor's improper comments during closing arguments may "so infect the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998)(quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Unless the alleged errors deprived a criminal defendant of the fundamental concepts of a fair trial, however, due process is not violated. United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1991). The Fourth Circuit has established a two-part test for determining when a prosecutor's comments deny a defendant due process. See United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988), overruled on other grounds. First, the prosecutor's comments must actually have been improper. See id. Second, the prosecutor's comments must have been so prejudicial that the criminal defendant was denied a fair trial. See id.

(# 10 at 18).

Petitioner's Response to the Motion for Summary Judgment repeats the comments of Mr. Plants that are the subject of this claim (# 16 at 23), and further argues:

Vouching occurs when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness. The prosecutor may not make explicit personal assurances that a witness is trustworthy or implicitly bolster the witness by indicating that information not presented to the jury supports the testimony. See United States v. Nwankwo, 2 F. Supp.2d 765 (1998).

Because Petitioner's lawyers did not object to these statements at the time they were made, the statements are reviewed for plain error. To reverse for plain error, the reviewing court must (1) identify an error; (2) which is plain; (3) which affects substantial rights and (4) which seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 123 L. Ed.2d 508, 113 S. Ct. 1770, 1777-79 (1993); United States v. Atkinson, 297 U.S. 157, 160, 80 L. Ed. 555, 56 S. Ct. 391; United States v.

39

<u>Mitchell</u>, 1 F.3d 235, 240 (1993 4th Cir.)

(<u>Id.</u> at 32).

The state habeas court made the following findings on this claim:

20. Fourth, Petitioner asserts that then-Assistant Prosecuting Attorney Mark Plants made improper prejudicial remarks during closing argument, which denied Petitioner a right to an impartial jury, free from outside influence.

21. Due process, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article III, sections 10 and 14 of the West Virginia Constitution, requires that a criminal defendant is entitled to trial by an impartial and objective jury free from outside influence. Syl. pt. 3, <u>State v. Young</u>, 173 W. Va. 1, 311 S.E.2d 118 (1983). The Supreme Court has cautioned, however, that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt. 5, <u>State v. Sugg</u>, 193 W. Va. 388, 456 S.E.2d 469 (1995). In particular, the Supreme Court has outlined four factors, which should be taken into account in determining whether improper prosecutorial comments are so damaging as to require reversal. These factors are as follows:

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

<u>Id.</u> at Syl. pt. 6.

22.  Applying these factors to the instant case, the
     Court finds that the closing arguments made by
     then-Assistant Prosecuting Attorney Mark Plants
     does [sic; do] not rise to the level of prejudice
     necessitating a new trial.  First, the Court
     concludes that Plants' arguments were reasonable
     inferences based on facts and evidence presented at
     trial and did not have a tendency to mislead the
     jury and prejudice Petitioner.  <u>See</u> <u>State ex rel.</u>
     <u>Edgell v. Painter</u>, 206 W. Va. 168, 175, 522 S.E.2d
     636, 643 (1999)(stating that during closing
     argument, a prosecutor is allowed to argue all
     reasonable inferences from the facts presented at
     trial).  Second, the Court notes that the remarks
     were not extensive.  Third, the Court finds that
     absent the remarks, there was sufficient evidence
     and testimony to convict Petitioner.  Finally, the
     Court concludes that Plants' comments were not
     <u>deliberately</u> placed to divert the jury's attention.
     Therefore, the Court concludes that Petitioner is
     not entitled to relief on his contention that he
     was prejudiced by improper prosecutorial remarks.

(# 9, Ex. 6 at 14-16)(emphasis in original).

The United States Supreme Court has held that "a criminal
conviction is not to be lightly overturned on the basis of a
prosecutor's comments standing alone, for the statements or conduct
must be viewed in context; only by so doing can it be determined
whether prosecutor's conduct affected fairness of the trial."
<u>United States v. Young</u>, 470 U.S. 1, 11 (1985).  In fact, courts
have applied what has come to be known as the "invited response" or
"invited reply" rule, whereby courts look at the remarks within the
context of the entire trial to determine whether  the prosecutor's
behavior amounted to prejudicial error.  <u>Id.</u> at 12.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." <u>Caldwell v. Russell</u>, 181 F.3d 731, 736 (6th Cir. 1999)(citations omitted), <u>abrogated on other grounds, Mackey v. Dutton</u>, 217 F.3d 399, 406 (6th Cir. 2000); <u>see also Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986)("The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'") (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).

The Fourth Circuit has enumerated factors to be considered in determining whether improper comments were so damaging to a defendant's trial that his defense was substantially prejudiced, so as to require reversal of his conviction.  Those factors are: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.  <u>United States v. Mitchell</u>, 1 F.3d 235, 241 (4th Cir. 1993).  The West Virginia cases cited by the State habeas court set forth the same test.

42

Mr. Plants' argument was rebutting Petitioner's contentions throughout the trial that the victim and her son had lied about this alleged sexual assault.   Given that the evidence was sufficient to find Petitioner guilty of the crimes with which he was charged and looking at the argument in the context of the entire proceedings, such a rebuttal did not infect the trial with unfairness or deny Petitioner due process.  See Buell v. Mitchell, 274 F.3d 337, 364-65 (6th Cir. 2001); Kinder v. Bowersox, 272 F.3d 532 (8th Cir. 2001); Sublett v. Dormire, 217 F.3d 598 (8th Cir. 2000); United States v. Sanchez-Sotelo, 8 F.3d 202, 211 (5th Cir. 1993); Simmons v. Bowersox, 235 F.3d 1124, 1136-37 (8th Cir. 2001).

Based upon a thorough review of the trial transcripts, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's rights to due process and a fair trial were not violated by the conduct of the prosecutor.  The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, and that Respondent is entitled to judgment as a matter of law on Ground Four of Petitioner's section 2254 petition.

## RECOMMENDATION

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Petitioner cannot succeed on

43

any of the claims contained in his section 2254 petition and, thus, Respondent is entitled to judgment as a matter of law on each of Petitioner's claims.   It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (# 9) and dismiss Petitioner's section 2254 petition with prejudice.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.   Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th

Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

    August 2, 2010                                      _Mary E. Stanley_
             Date                               Mary E. Stanley
                                   United States Magistrate Judge